UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AARON SCHULER, individually,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>　　　　　　　Defendant. | Case No. 4:18-CV-00234-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Presently before the Court is Plaintiff's motion to amend the complaint to add a claim for punitive damages. (Dkt. 103.) The motion is fully briefed and at issue. The Court conducted a hearing on July 7, 2021. After carefully considering the record, oral argument, and otherwise being fully advised, the Court will deny the motion.

MEMORANDUM DECISION AND ORDER - 1

# FACTUAL AND PROCEDURAL BACKGROUND[1]

This case involves a dispute over an incident that occurred at the Idaho National Laboratory ("INL") in Idaho Falls, Idaho on June 14, 2017. (Dkt. 57.) On that day, Aaron Schuler arrived at the INL to make a delivery via a long-haul semi-truck.

Schuler was delivering a large piece of equipment, an "in-pile tube", to the Advanced Test Reactor Complex ("ATR Complex") at the INL. The ATR Complex is a high security site with only one entrance through a vehicle inspection bay (known as the "VMF"). All vehicles are subject to onsite inspection in the VMF prior to entering the ATR Complex.

The security guards who perform onsite vehicle inspections are employed by Defendant Battelle Energy Alliance ("BEA"), a private contractor for the United States Department of Energy ("DOE"). BEA carries out the day-to-day management and operation of the INL and its facilities, including the ATR Complex.

Situated directly outside the north end of the VMF, just prior to the entrance of the ATR Complex, is a hydraulically operated in-ground retractable vehicle security barrier, commonly referred to as an Active Vehicle Barrier ("AVB") or Delta Barrier. The AVB was installed in 1986. Vehicles must travel over the AVB to enter the ATR Complex.

When placed in an upright or raised position, the AVB acts as a barrier preventing vehicles from entering the ATR Complex. The AVB can be lowered to a closed position

---

[1] The factual and procedural background are known to both the parties and the Court and are therefore only summarized here for brevity. The complete background can be found in the Court's prior orders. (Dkt. 56, 66, 73.)

**MEMORANDUM DECISION AND ORDER - 2**

to allow vehicle access into the ATR Complex. The AVB is operated by BEA personnel from a control panel located at the north end of the VMF bay and to the right side of the AVB.

When Schuler arrived at the inspection bay, the BEA security guard, Officer Dustin Sobieski, directed Schuler to pull his semi-truck into the VMF for inspection. Schuler pulled the truck into the VMF, with the front of the truck close to the raised AVB. However, the truck was too long to fit entirely within the bay. Officer Sobieski instructed Schuler to turn off the engine and open all truck compartments and the engine hood. Officer Sobieski then inspected the truck.

Once the inspection was completed, Officer Sobieski instructed Schuler to close the truck's compartments and engine hood. Officer Sobieski and Schuler walked together along the passenger side of the trailer toward the front of the truck. Upon approaching the front passenger corner of the truck, Officer Sobieski turned to his right to access the AVB control panel and Schuler turned in the opposite direction toward the front of the truck to close the engine hood. Positioning himself at the front of the truck to close the engine hood placed Schuler directly in-between the raised AVB and the front of the truck. Schuler claims that Officer Sobieski then lowered the AVB without ensuring Schuler was not in the AVB's path and without providing any forewarning. As the AVB closed, it crushed Schuler's right leg causing serious injuries. (Dkt. 57.)

On July 17, 2017, a Root Cause Analysis Report was finalized after an investigation of the incident was conducted by an Investigation and Cause Analysis Team led by Lisbeth A. Mitchell of the INL. (Dkt. 105-1.) The report identified a number of

**MEMORANDUM DECISION AND ORDER - 3**

causes for the incident: 1) failure to identify and mitigate all hazards associated with the AVB through engineered or administrative controls; 2) inadequate safeguarding of equipment to protect personnel; 3) less-than-adequate human engineering; 4) human performance issues and management failures went undetected; 5) training deficiencies; 6) procedure lacked adequate instruction; 7) equipment was improperly maintained; and 8) signs to stop were ignored. (Dkt. 105-1.)

As a result of the incident, Schuler initiated this lawsuit against BEA on May 29, 2018. (Dkt. 1.) Schuler alleges five negligence claims: (1) respondeat superior; (2) negligent entrustment; (3) negligent supervision; (4) negligent failure to properly train; and (5) negligent failure to properly maintain and repair. (Dkt. 57.) On April 2, 2021, Schuler filed the motion for leave to amend complaint to add punitive damages presently before the Court. (Dkt. 103.)

## STANDARD OF LAW

A punitive damages claim is substantive in nature and, accordingly, is controlled by Idaho law in diversity cases. *See Strong v. Unumprovident Corp.*, 393 F.Supp.2d. 1012, 1025 (D. Idaho 2005). Idaho Code Section 6-1604 provides that, after an appropriate pretrial motion and a hearing, the court must allow a party to amend the pleadings "if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho Code § 6-1604(2).

It is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded

**MEMORANDUM DECISION AND ORDER - 4**

cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992) (citing *Jones v. Panhandle Distributors, Inc.*, 792 P.2d 315 (Idaho 1990)). The decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Id.*

"The determination of whether a party should be permitted to assert a claim for punitive damages is not based upon the type of case or claim [but instead]…revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 191 P.3d 196, 201 (Idaho 2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004)). The defendant must (i) act in a manner that was extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – the likely consequences, and must (ii) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, or outrageousness. *See Myers*, 95 P.3d at 983; *see also* Idaho Code § 6-1604(1). Simple negligence does not support an award of punitive damages. *See Inland Grp. of Companies, Inc. v. Providence Wash. Ins. Co.*, 985 P.2d 674, 684 (Idaho 1999). Further, reckless, wanton, or grossly negligent conduct alone is not sufficient under Idaho law. *See Cummings v. Stephens*, 336 P.3d 281, 296 n.5 (Idaho 2014).

## ANALYSIS

On this motion, Schuler asserts that BEA committed a sufficiently bad act with the requisite bad state of mind to support an award of punitive damages. (Dkt. 103.) Relying on the Root Cause Analysis Report, an expert witness report, the AVB user guide, and other INL records, Schuler argues BEA knew the AVB was dangerous and could cause

**MEMORANDUM DECISION AND ORDER - 5**

serious bodily injury, but nevertheless failed to take appropriate precautions to prevent or mitigate against such injuries. (Dkt. 103, 104, 105, 108.) Generally, Schuler argues BEA failed to adequately train its employees to safely operate the AVB, and that BEA knew the AVB was malfunctioning and failed to take appropriate precautions before and on the day of the incident.

In response, BEA disputes Schuler's contentions and maintains that its actions in operating and maintaining the AVB were appropriate. (Dkt. 106.) Moreover, BEA argues Schuler's assertions do not rise to the level warranting a claim for punitive damages.

For the following reasons, the Court finds Schuler has failed to demonstrate a likelihood of proving facts at trial sufficient to support an award of punitive damages. That is to say, the bases relied on by Schuler, either singularly or in combination, do not establish that BEA performed a bad act with a bad state of mind.

As to the first factor, Schuler's assertions suggest BEA was negligent or possibly grossly negligent in its training, operation, and maintenance of the AVB. That however is insufficient for an award of punitive damages. *See Cummings*, 336 P.3d at 296 n. 5 ("Since the enactment of [I.C. § 6-1604(1) in 1987], gross negligence or deliberate or willful conduct is not sufficient for an award of punitive damages."); *see also Murray v. City of Bonners Ferry*, 2017 WL 4318738, at *2 (D. Idaho 2017). Schuler's contentions that BEA knew of the dangers presented by the AVB and failed to take steps to mitigate the potential harm, at best, show that BEA breached a duty of care by failing to implement or adhere to particular standards or policies. Schuler has not identified facts or evidence sufficient to establish BEA acted with an "extreme deviation from reasonable

**MEMORANDUM DECISION AND ORDER - 6**

standards of conduct." *Does I-XIX v. Boy Scouts of America*, 2019 WL 1676212, at *1 (D. Idaho Apr. 17, 2019) (identifying five factors to consider in determining whether a defendant's conduct is an extreme deviation from reasonable standards of conduct).[2]

As to the second factor, Schuler points to no facts or evidence demonstrating that BEA acted with the requisite "extremely harmful state of mind." *Id.* On this point, there is a noticeable absence of evidence to support a finding that BEA acted with an "oppressive, fraudulent, malicious, or outrageous" state of mind. *Id.* The materials relied on by Schuler at most may establish that BEA acted negligently or was possibly even grossly negligent in regards to its responsibilities for operating and maintaining the AVB. Again, this is not enough to show BEA acted with the requisite bad state of mind to warrant a claim for punitive damages.

Accordingly, the Court will deny the motion for leave to amend the complaint to add a claim for punitive damages.

---

[2] "The Idaho courts have identified five factors to consider in determining whether a defendant's conduct is an extreme deviation from reasonable standards of conduct: (1) Did defendants' unreasonable conduct actually caused harm to the Plaintiffs? (2) Have plaintiffs presented expert testimony? (3) Is there a special relationship of trust and confidence between the parties? (4) Is there evidence of a continuing course of oppressive conduct? and (5) Have plaintiffs offered proof of defendants' knowledge of the likely consequences of their conduct." *Does I-XIX v. Boy Scouts of America*, 2019 WL 1676212, at *1 (citing *Thurston Enterprises, Inc. v. Safeguard Business Systems, Inc.*, 2019 WL 667966, at *12-13. (Idaho 2019)). Here, Schuler's evidence, including the expert report of David Pierce, may suggest that BEA was negligent or even grossly negligent in that BEA knew of the dangers posed by the AVB and that BEA's actions, or inaction, caused or contributed to Schuler's injury. However, factors (3) and (4) are clearly not present here. Simply, the evidence relied on by Schuler does not demonstrate that BEA's conduct was an extreme deviation from reasonable standards sufficient to support an award of punitive damages.

**MEMORANDUM DECISION AND ORDER - 7**

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that the Motion for Leave to File Amended Complaint (Dkt. 103) is **DENIED**.

IT IS FURTHER ORDERED that the trial in this matter is set to commence on **March 14, 2022 at 9:30 a.m.** (MT) in Pocatello, Idaho. A separate trial scheduling order will be issued setting dates for a pretrial conference and pretrial filings.

DATED: July 29, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge